IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF AUSTIN, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | NO. 1:17-cv-00843-SS |
| KEN PAXTON, Texas Attorney General, | § | |
| in his official capacity, and the TEXAS | § | |
| WORKFORCE COMMISSION, | § | |
|     Defendants. | § | |

## CITY OF AUSTIN'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE SAM SPARKS:

The City of Austin ("City") files this First Amended Complaint seeking a declaration that Texas Local Government Code Section 250.007 ("Section 250.007"), a law that largely eliminates the City's authority to protect local residents who pay for housing with federal housing choice vouchers, is invalid.

## I.  SUMMARY

1.     Section 250.007 of the Texas Local Government Code ("Section 250.007") prohibits a municipality, like the City of Austin, from enacting or enforcing ordinances that prohibit discrimination against individuals who receive federal housing assistance. Section 250.007 violates the Supremacy Clause of the U.S. Constitution, permits actions that constitute discriminatory housing practices that are prohibited under the Federal Fair Housing Act, and constitutes interference prohibited under the Federal Fair Housing Act. The City seeks a declaration that Section 250.007 is preempted and invalid.

## II.   JURISDICTION AND VENUE

2.      The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201, *et seq.*, to decide the City's claims.

3.      Venue properly lies within the Western District of Texas. Plaintiff reside in this District, and defendants Attorney General Paxton and Texas Workforce Commission maintain offices in this District. 28 U.S.C. §§ 124(d)(1), 1391(b)(1). Further, a substantial portion of the events or omissions giving rise to this action occurred or will occur in this District. 28 U.S.C. § 1391(b)(2)

## III.   PARTIES

4.      Plaintiff City of Austin, appearing and proceeding by and through its City Attorney, is a home-rule municipality in the State of Texas. The City, acting through its Fair Housing Office, is a U.S. Housing and Urban Development-certified agency with jurisdiction to enforce the Fair Housing Act.

5.      Defendant Ken Paxton is the elected Attorney General for the State of Texas. The Attorney General is authorized "to institute proper court proceedings to enforce or protect any right of the public that is violated." *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). The Texas Constitution designates the Attorney General as the representative of the State in all suits and pleas to which the State may be a party. TEX. CONST. ART. 4 § 22. Attorney General Paxton is sued in his official capacity.

6.      Defendant Texas Workforce Commission ("Commission") is an agency of the State of Texas that is authorized to provide for fair housing practices, create procedure for investing and settling complaints of discriminatory housing practices, and provide rights and remedies substantially equivalent to those granted under federal law. *See* TEX. PROP. CODE §§ 301.001, *et*

*seq.* The Attorney General is the designated representative of the Commission in enforcement proceedings. TEX. PROP. CODE §§ 301.131-301.133.

## IV.    FACTUAL ALLEGATIONS

### A.    Renting and the Housing Choice Voucher Program

7.      At least half of the City's residents rent housing.[1]

8.      Within the City limits, approximately 70 percent of African-American residents are renters and more than 60 percent of Hispanic residents are renters.[2]

9.      The federal Housing Choice Voucher (HCV) Program was created for the purposes of "aiding low-income families in obtaining a decent place to live" and "promoting economically mixed housing." 42 U.S.C. § 1437f(a).

10.     Within the City of Austin, many individuals and families have been awarded vouchers pursuant to the HCV Program.

11.     In 2014, the Housing Authority of the City of Austin (HACA) administered at least 5,000 vouchers, which in turn served over 14,000 individuals. Of those individuals, approximately 58 percent were African-Americans and 41 percent were white. Of those white individuals, 75 percent identified as Hispanic or Latino.[3]

12.     Unfortunately, the vast majority of local landlords refuse to rent their properties to HCV holders who can pay the rent, satisfy the tenant selection criteria, and for whom there is no legitimate business reason to reject.

---

[1] *Owner and Renter Households by Race and Ethnicity*, published on City of Austin website, http://www.austintexas.gov/sites/default/files/files/Planning/Demographics/Tenure_by_Race_and_Ethnicity_CoA_2015.pdf (last viewed Oct. 24, 2017).
[2] *Id.*
[3] *Housing Choice Voucher Program Demographics Report*, Exhibit A, attached herein and incorporated by reference.

13.     The City, as a recipient of Community Development Block Grant ("CDBG") program funds, must comply with the provisions of the Housing and Community Development Act, including the requirement that it affirmatively further fair housing as set forth in 42 U.S.C. § 5304(b)(2).

14.     The obligation to affirmatively further fair housing means that the City will identify impediments to fair housing choice and take steps to address the impediments.

15.     One impediment identified in prior City of Austin Analysis of Impediments is discrimination based on source of income.

16.     As a result of diminished housing choice, including reduced choice due to landlord discrimination against HCV holders, a large majority of voucher holders are segregated to lower opportunity areas of the City.

17.     The segregation of HCV holders to lower opportunity neighborhoods disproportionately impacts African-American and Hispanic residents, children, and disabled individuals.

**B.      City of Austin Fair Housing Law**

18.     The City of Austin has a long-standing set of City Code provisions that prohibit housing discrimination. Austin City Code Chapter 5-1 (*Housing Discrimination*) prohibits discrimination based on an individual's race, national origin, religion, color, sex, familial status, disability, student status, marital status, sexual orientation, gender identity, age, or creed.

19.     The Austin Fair Housing Office (FHO) administers Chapter 5-1, which is substantially equivalent to the federal Fair Housing Act with regard to substantive rights, procedures, remedies, and the availability of judicial review. The City's FHO received its initial certification from HUD in 1996 and has retained its certification since that time.

20.     On or about April 17, 2014, the Austin City Council passed Resolution No. 20140417-048 ("Resolution") directing the City Manager to prepare an ordinance to amend the City Code to prohibit discrimination against an individual based on their source of income.

21.     The City Council enacted the Resolution in response to several factors, including recommendations from the City's Community Development Commission; an Austin Tenants' Council report concerning the acceptance of vouchers by landlord; and a report from HUD concerning the impact of prohibiting source of income discrimination.

22.     The Resolution also supports the City's federally mandated effort to affirmatively further fair housing.

23.     On or about December 11, 2014, the Austin City Council passed Ordinance No. 20141211-050 ("Ordinance"), which prohibits landlords from discriminating against a person in the provision of housing based on their source of income.

24.     The Ordinance defines "source of income" as "lawful, regular, and verifiable income including, but not limited to, housing vouchers and other subsidies provided by government and non-governmental entities, child support, or spousal maintenance, but does not include future gifts."

25.     The Ordinance does not require landlords to favor a person with housing choice vouchers over any other applicant; rather, the Ordinance simply prohibits a landlord from denying an otherwise qualified applicant because of their source of income.

26.     After the Austin City Council passed the Ordinance, the City notified HUD of the Ordinance. To date, HUD has not withdrawn the City's substantial equivalency certification.

### C.    Austin Apartment Association Lawsuit

27.    The Association, whose members rent residential dwellings and are subject to Austin City Code Chapter 5-1 (*Housing Discrimination*), immediately sought to enjoin the City's Ordinance and alleged that the Ordinance violated federal and state laws.

28.    In response, the District Court, Judge Sam Sparks presiding, ruled that the Ordinance is consistent with federal purposes and objectives as described in the FHA, and denied relief. *Austin Apartment Ass'n v. City of Austin*, 89 F.Supp.3d 886 (W.D.Tex. 2015) (issued Feb. 27, 2015).

29.    In regard to the City's Ordinance, the Court found "[t]he Ordinance, in protecting from discrimination all of the classes protected under federal law and then some, exhibits the essential feature of federal fair housing law." 89 F.Supp.3d at 893. Specifically, the Court found:

> [T]he Ordinance advances an obviously legitimate government interest: ensuring low-income persons—many of whom are racial minorities, children, disabled, or elderly—have access to affordable housing (and thus to better schools and safer neighborhoods) throughout the City of Austin.

89 F.Supp.3d at 898.

30.    The Court also found:

> The record shows HCVP participants suffer serious discrimination in the Austin private housing market and, to the extent they are able to find housing, are concentrated in the poorest areas of the City. The City determined the public interest required discrimination against voucher holders be prohibited, as have dozens of states and municipalities around the nation.

89 F.Supp.3d at 899-900.

### D.    Legislative Response

31.    On or about December 19, 2014, Texas Senator Charles Perry filed Senate Bill 267 ("SB 267"), which sought to prohibit Texas cities from adopting or enforcing ordinances that

prohibit discrimination on the basis of an individual's income that comes from a federal housing assistance program.

32.     On June 19, 2015, Governor Abbott signed into law SB 267, a law that specifically overruled the City's ordinance. At the time SB 267 was signed into law, no other Texas city or county had enacted local protections for HCV holders.

33.     SB 267 was codified as Texas Local Government Code Section 250.007 ("Regulation of Rental or Leasing of Housing Accommodations"), effective September 1, 2015. Section 250.007 provides:

> Except as provided by this section, a municipality or county may not adopt or enforce an ordinance or regulation that prohibits an owner, lessee, sublessee, assignee, managing agent, or other person having the right to lease, sublease, or rent a housing accommodation from refusing to lease or rent the housing accommodation to a person because the person's lawful source of income to pay rent includes funding from a federal housing assistance program.
>
> (b) This section does not affect an ordinance or regulation that prohibits the refusal to lease or rent a housing accommodation to a military veteran because of the veteran's lawful source of income to pay rent.
>
> (c) This section does not affect any authority of a municipality or county or decree to create or implement an incentive, contract commitment, density bonus, or other voluntary program designed to encourage the acceptance of a housing voucher directly or indirectly funded by the federal government, including a federal housing choice voucher.

TEX. LOCAL GOV'T CODE § 250.007.

34.     Beginning September 1, 2015, Section 250.007 limited the City's ability to enforce the Ordinance's protections to HCV holders who are military veterans.

35.     If the City investigates a complaint of discrimination based on source of income and the complainant receives federal housing assistance, i.e. is a voucher holder, but is not a military veteran, it is likely the Attorney General will take action to enforce the statute against the City.

36.     If the Commission receives a complaint related to discrimination based on source of income and the complainant receives federal housing assistance, i.e. is a voucher holder, but is not a military veteran, the Commission cannot carry out its statutory duties. For instance, a complainant might allege that a landlord discriminated on the basis of race, while the respondent claims the reason was because the complainant has a HCV. Because Section 250.007 makes discrimination on the basis of source of income lawful, the Commission would not be able to further investigate to determine if the landlord's reason was pretext. Such a result impairs the Commission's ability to uphold federal and state fair housing laws.

## V.     CAUSE OF ACTION: CONSTITUTIONAL PREEMPTION

37.     The City hereby incorporates by reference the preceding paragraphs 1 through 36.

38.     The City seeks a declaration that Section 250.007 is invalid, preempted, and unconstitutional because it violates the Supremacy Clause of the United States Constitution.

39.     Section 250.007 violates the Supremacy Clause of the United States Constitution by obstructing the purposes and objectives of Congress—including the objectives of promoting both decent housing for low-income families and fair housing choice—as expressed in the Housing Choice Voucher Program, the Fair Housing Act, and the Housing and Community Development Act, among other laws. *See* 42 U.S.C. §§ 1437(a) 1437f(a), 3601, 5304(b). Section 250.007 also specifically conflicts with HUD interpretations of federal law, including its determination that local source of income protections are consistent with Congressional fair housing objectives. *See* 24 C.F.R. § 982.53.

## VI.    CAUSE OF ACTION: STATUTORY PREEMPTION

40.    The City hereby incorporates by reference the preceding paragraphs 1 through 39.

41.    The City seeks a declaration that Section 250.007 is invalid and preempted under 42 U.S.C. § 3615 because it permits an action that would be a discriminatory housing practice under the Fair Housing Act.

42.    The City seeks a declaration that Section 250.007 is invalid and preempted under 42 U.S.C. § 3617 because it constitutes interference with rights protected under the Fair Housing Act.

## PRAYER FOR RELIEF

The City seeks relief including:

A.  A declaration that Section 250.007 is invalid, preempted, and unconstitutional; and

B.  Any further relief that the Court deems fit and proper.

Respectfully submitted,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, CHIEF, LITIGATION

*/s/* Michael Siegel
MICHAEL SIEGEL
State Bar No. 24093148
michael.siegel@austintexas.gov
PATRICIA LINK
State Bar No. 24041343
patricia.link@austintexas.gov
Telephone: (512) 974-2888
Facsimile: (512) 974-1311
City of Austin – Law Department
P. O. Box 1546
Austin, Texas 78767-1546

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I served a copy of the foregoing pleading on defendants via the Court's ECF/CM system, in compliance with the Federal Rules of Civil Procedure, this 24th day of October, 2017.


<u>/s/ Michael Siegel</u>
MICHAEL SIEGEL

# EXHIBIT A

**HOUSING CHOICE VOUCHER PROGRAM**
**DEMOGRAPHICS REPORT**
**September 11, 2014**

| Race Only | | |
|---|---|---|
| | | |
| Black/African American | 8591 | 58% |
| White | 6095 | 41% |
| American Indian/Alaska Native | 108 | 1% |
| Asian | 94 | 1% |
| Native Hawaiian/Other Pacific Islander | 4 | 0% |
| Totals For Race Only = | 14892 | 100% |

| Race and Ethnicity | Not Hispanic or Latino | Hispanic or Latino |
|---|---|---|
| Race | | |
| Black/African American | 8399 | 192 |
| White | 1509 | 4584 |
| American Indian/Alaska Native | 24 | 84 |
| Asian | 84 | 10 |
| Native Hawaiian/Other Pacific Islander | 4 | 0 |
| Subtotals Race and Ethnicity= | 10020 | 4870 |
| Grand Total = | | 14890 |

| Ethnicity Only per Individuals | | |
|---|---|---|
| Not Hispanic or Latino | 10020 | 67% |
| Hispanic or Latino | 4870 | 33% |
| | | |
| | | |
| Totals for Ethnicity  Only = | 14890 | 100% |

| Citizenship Per Individuals | | |
|---|---|---|
| Eligible Citizen | 14673 | 98.53% |
| Eligible Non-Citizen | 170 | 1.14% |
| Ineligble Non-Citizen | 49 | 0.33% |
| Pending Verification | 0 | 0.00% |
| Totals = | 14892 | 100.0% |

| Disabled Individuals | | |
|---|---|---|
| Yes (disabled) | 3489 | 23% |
| No (disabled) | 11403 | 77% |
| Totals = | 14892 | 100% |

| Elderly Individuals | | |
|---|---|---|
| Yes (elderly) | 1029 | 6.9% |
| No (elderly) | 13863 | 93.1% |
| Totals = | 14892 | 100.0% |

| Gender per Individuals | | |
|---|---|---|
| Male | 5477 | 37% |
| Female | 9415 | 63% |
| Totals = | 14892 | 100% |

| Age per Individuals | | |
|---|---|---|
| Total No Of Adults | 7329 | 49.2% |
| Total No Of Kids | 7563 | 50.8% |
| Totals = | 14892 | 100.0% |

| Increments | | | | | |
|---|---|---|---|---|---|
| | IKE | 0 | V01 | 4948 | VPB | 2 |
| | S04 | 11 | VAS | 297 | VPO | 114 |
| | S06 | 24 | VMS | 57 | | |
| | S08 | 59 | TPV | 3 | | |
| | SRO | 48 | FUP | 75 | | |
| | T02 | 43 | ICV | 15 | | |
| | DHC | 0 | NEDV | 30 | | |
| | | | | | | |
| Totals= | 185 | Totals= | 5425 | Totals= | 116 |

Checks     $729            $776

| Age Distribution | | |
|---|---|---|
| Age Range 0-5 | 1312 | 8.8% |
| Age Range 6-10 | 2138 | 14.4% |
| Age Range 11-17 | 3616 | 24.3% |
| Age Range 18-29 | 1949 | 13.1% |
| Age Range 30-39 | 1949 | 13.1% |
| Age Range 40-49 | 1323 | 8.9% |
| Age Range 50-59 | 1245 | 8.4% |
| Age Range 60-69 | 825 | 5.5% |
| Age Range 70 + | 535 | 3.6% |
| Totals = | 14892 | 100.0% |

| Head Of Houshold Characteristics | % | Count |
|---|---|---|
| No of Female HOH | 84% | 4815 |
| No of Male HOH | 16% | 905 |
| No of Disabled only HOH | 43% | 2452 |
| No of Elderly only HOH | 16% | 932 |

| Family Self-Sufficiency Program | | |
|---|---|---|
| Total Families on FSS (P and E) | | 173 |
| Total Escrow for all families | | $381,039 |
| Total Families with Escrow | | 114 |
| | | |
| | | |

**HOUSING CHOICE VOUCHER PROGRAM**
**DEMOGRAPHICS REPORT**
**September 11, 2014**

| Income Distribution Per Household | | | |
|---|---|---|---|
| 0 (Zero Income) | $0 | 311 | 5.44% |
| $1- $9, 999 | <$10K | 2224 | 38.88% |
| $10,000 - $19,999 | $10K + | 1807 | 31.59% |
| $20,000 - $29,999 | $20K + | 918 | 16.05% |
| $30,000 - $39,999 | $30K + | 340 | 5.94% |
| $40,000 - $49,999 | $40K + | 97 | 1.70% |
| $50,000 - $59,999 | $50K + | 23 | 0.40% |
| | Totals = | 5720 | 100% |

| Average Income overall = | | $14,117 |
|---|---|---|



| Time on Assisted Housing | | |
|---|---|---|
| 0 to 1  Years on S8 | 364 | 6.37% |
| 2 to 5  Years on S8 | 1486 | 26.00% |
| 6 to 10  Years on S8 | 1567 | 27.41% |
| 11 to 15  Years on S8 | 1695 | 29.65% |
| 16 - 20  Years on S8 | 387 | 6.77% |
| 20 to 25  Years on S8 | 211 | 3.69% |
| 25 +  Years on S8 | 6 | 0.10% |
| | Totals = | 5716 | 100% |



| Average Years on Program Overall | 8.9 |
|---|---|
| Average Tenant Rent | $217 |
| Average HAP Rent | $698 |
| Average Contract Rent | $888 |

Increments

```
        Grants for the homeless              V01    4948
regular vouchers                             VPB    2 Incoming
ports billed
        S04    11 Shelter Plus Care          VAS    297  VASH
(homeless veterans)                   VPO    114 Outgoing ports
        S06    24 Shelter Plus Care          VMS    57
Mainstream for persons with disabilities
        S08    59 Shelter Plus Care          TPV    3
Tenant Protection Vouchers
        SRO    48 Single Room Occupancy      FUP    75
Family Unification vouchers
        T02    43 Tenant Based Rental Assistance   ICV    15   IKE
conversion vouchers
                                             NEDV   30
Non-elderly disabled vouchers (individuals from nursing homes)


        Totals=        185 (homeless grants)  Totals=      5425 (HCV)
Totals=        116 (incoming and outgoing portables)
```