IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CITY OF AUSTIN,
    Plaintiff,

-vs-

KEN PAXTON, in his official capacity as
Texas Attorney General, and TEXAS
WORKFORCE COMMISSION,
    Defendants.

CAUSE NO.:
AU-17-CA-00843-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Attorney General Ken Paxton and Texas Workforce Commission (collectively, the State)'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim [#21], the City of Austin (the City)'s Response [#24] in opposition, and the State's Reply [#27] in support. Having reviewed the documents, the governing law, the arguments of counsel, and the file as a whole, the Court now enters the following opinion and order.

### Background

The question in this case is whether federal law preempts a state law—Texas Local Government Code § 250.007(c)—that allows landlords to decline to rent to tenants who seek to pay their rent using federal housing vouchers.

<u>The Federal Housing Choice Voucher Program</u>

Congress created the Housing Choice Voucher Program to "aid[] low-income families in obtaining a decent place to live" and to "promot[e] economically mixed housing." 42 U.S.C. § 1437f(a). The voucher program is funded by the United States Department of Housing and

Urban Development (HUD) and administered by state and local public housing authorities in accord with regulations promulgated by HUD.

Once admitted to the voucher program, program participants are responsible for finding a landlord in the private rental market willing to rent to them. 24 C.F.R. § 982.302(a). Landlords who participate in the program may screen prospective tenants and reject them if screening reveals red flags in terms of paying rent and utility bills, caring for rental housing, respecting neighbors, criminal activity, and the like. *Id.* § 982.307(a). And even after potential tenants locate a willing landlord and negotiate the terms of the lease, both the landlord and the tenant must meet numerous administrative requirements imposed by both federal and state law. *See generally Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 890–91 (W.D. Tex. 2015) (outlining administrative requirements).

The City Ordinance

In December 2014, the City adopted a housing ordinance (the Ordinance) prohibiting landlords from refusing to rent to tenants who wish to pay for their housing using federal vouchers. Am. Compl. [#16] at 5. The City enacted the Ordinance because to prevent landlords from discriminating against potential tenants who sought to pay their rent using federal housing vouchers. *Id.* at 3–5. According to the City, such discrimination relegates voucher holders to lower opportunity areas of the City and disproportionately impacts minority residents, children, and the disabled. *Id.* at 4.

The State Law

In response to enactment of the City's Ordinance, the State enacted Texas Local Government Code § 250.007(c) to preserve the right of landlords to decline to accept federal housing vouchers. *Id.* at 7. Section 250.007(c) bars municipalities and counties from adopting or

2

enforcing any ordinance or regulation that prohibits a landlord "from refusing to lease or rent . . . to a person because the person's lawful source of income to pay rent includes funding from a federal housing assistance program." *Id.*

Procedural Posture

In August 2017, the City filed this suit seeking to enjoin § 250.007(c) as preempted by federal law. Compl. [#1]. The State now files a motion to dismiss which is ripe for review.

## Analysis

The State argues the City's complaint must be dismissed because this Court lacks jurisdiction to entertain the City's claims and because, in the alternative, the City has failed to plead sufficient facts to state a plausible preemption claim. The Court first considers whether it has jurisdiction to hear the City's claims. As the Court finds it has jurisdiction, it then considers whether the City's complaint should be dismissed for failure to state a claim.

### I. Motion to Dismiss for Lack of Jurisdiction

#### A. Legal Standard

A motion under Rule 12(b)(1) asks a court to dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks omitted). Motions to dismiss under Rule 12(b)(1) challenge a court's "very power to hear the case," and the court may therefore "weigh the evidence and satisfy itself" subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (internal quotation marks omitted).

B.  Application

The State argues this Court lacks jurisdiction to hear the City's suit because (1) the City lacks standing and (2) the State is entitled to immunity under the Eleventh Amendment. Mot. Dismiss [#21] at 7–12. The Court addresses these arguments in turn.

1.  Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies, and, in order to state a case or controversy, plaintiffs must establish they have standing to sue. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980); *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To meet the standing requirement, a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, the City has demonstrated it has standing to sue. As an initial matter, the City has alleged an injury in fact because it alleges § 250.007(c) preempts the Ordinance. Am. Compl. [#16] at 7. In the same way a state suffers an injury in fact when a federal law purports to preempt a law enacted by the state, a city suffers an injury in fact when the state enacts a law which purports to preempt a local ordinance. *Cf. Texas v. United States*, 809 F.3d 134, 157 (5th Cir. 2015) ("[C]ourts have often held that states have standing based on preemption."); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) ("Federal regulatory action

4

that preempts state law creates a sufficient injury-in-fact."); *State of Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232–33 (6th Cir. 1985) (concluding state suffered injury in fact when federal government declared state statute preempted by federal law). Indeed, in Texas, "home-rule cities" of the sort at issue here occupy a position akin to that of states in the federal system, in that they "have the full power of self-government" and look to the Legislature "not for grants of power, but only for limitations on their powers." *S. Crushed Concrete, LLC v. City of Hous.*, 398 S.W.3d 676, 678 (Tex. 2013). Thus, "[an] ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute." *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dall.*, 852 S.W.2d 489, 491 (Tex. 1993). In this context, the City's inability to enforce its ostensibly preempted Ordinance qualifies as an injury in fact sufficient to support standing.

The City also meets the requirements of traceability and redressability because if the Court invalidates § 250.007(c) as preempted by federal law, then the City's Ordinance will no longer be unenforceable. *Wyoming*, 539 F.3d at 1242 ("[T]here is little doubt that [the injury inflicted by preemption] satisfies the traceability and redressability requirements of standing."); *see also Ohio*, 766 F.2d at 232–33 ("Ohio has standing to challenge the Department's regulation and undertake to vindicate its own law."). In sum, the City has demonstrated an injury in fact, traceability, and redressability and, as a result, has standing to pursue its preemption claims.

### 2. Eleventh Amendment Immunity

The Eleventh Amendment bars suits by private citizens against a state in federal court. *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)). However, under *Ex parte Young*, plaintiffs may sue state officials to halt the enforcement of an unconstitutional state statute, provided the state official has "some connection

with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 157 (1908); *Okpalobi*, 244 F.3d at 415. In determining whether the doctrine of *Ex parte Young* allows a plaintiff to avoid an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry" into whether the complaint alleges "an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted).

The State argues *Ex parte Young* should not apply for two reasons, neither of which is persuasive. First, the State argues the *Ex parte Young* exception should not apply because the City has sued Attorney General Paxton and, according to the State, Attorney General Paxton lacks any "connection" to the enforcement of § 250.007. Mot. Dismiss [#21] at 9–11. In fact, the State contends no state official possesses the ability to enforce § 250.007 because the provision does not specifically provide for its own enforcement. *Id.*

Though the State argues otherwise, the Attorney General is not bereft of authority to enforce § 250.007. The City has sued Attorney General Paxton in his official capacity, and under the Texas Constitution, the Attorney General is the chief law enforcement officer of the state. Am. Compl. [#16] at 1; *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). In this capacity, Attorney General Paxton has repeatedly brought suit to enforce the supremacy of state law over superseded municipal ordinances. *See* Amended Complaint at 40, *Texas v. Travis Cty., Tex.*, 272 F. Supp. 3d 973 (W.D. Tex. May 31, 2017) (No. 1:17-cv-00425-SS) (suing the City of Austin to enforce "the supremacy of legislatively enacted general laws over local ordinances" as established by the Texas Constitution); *see also Republic Waste Servs. of Tex., Ltd. v. Tex. Disposal Sys., Inc.*, 848 F.3d 342, 344–45 (5th Cir. 2016) (noting home-rule cities derive their powers of self-governance from the Texas Constitution). The Attorney General

6

might similarly bring a proceeding to enforce the supremacy of § 250.007 over the City's Ordinance. He therefore possesses "some connection" to the enforcement of the statute and qualifies as an appropriate party under *Ex parte Young*.

Second, the State argues, in reliance on *Okpalobi*, that the *Ex parte Young* exception is not available until the State threatens or commences enforcement proceedings against the City. Mot. Dismiss [#21] at 11–12. However, as the State correctly observes, the portions of *Okpalobi* that address *Ex parte Young* are not binding precedent. *Okpalobi*, 244 F.3d at 415 (Parker, J., dissenting) ("Judge Jolly's attempt to excessively narrow *Ex parte Young*'s scope garners only a plurality of this court, and therefore, to use his language, it 'is not binding authority to any.'"); *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (declining to decide "whether *Ex parte Young* applies only when there is a threatened or actual proceeding to enforce the challenged state law").

Absent Fifth Circuit precedent to the contrary, this Court sees no reason to deviate from the Supreme Court's admonition that *Ex parte Young* requires only a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon*, 535 U.S. at 645; *see also Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 250–52, 255 (2011) (concluding suit by state agency against other state officials falls within the ambit of *Ex parte Young* even in the absence of threatened enforcement proceedings); *Okpalobi*, 244 F.3d at 440 (Benavides, J., concurring in part and dissenting in part) ("The Supreme Court's principal limit [on *Ex parte Young*] has been on the nature of the relief sought: *Ex parte Young* cannot be used to expose states to retroactive monetary damages."); *Summit Medical Assocs. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) (holding plaintiff need not wait until enforcement proceedings are in progress to commence suit and clarifying "the

7

ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature[] . . . and cases where relief is retrospective"). Here, the City alleges § 250.007 is invalid and preempted by federal law. This qualifies as an ongoing violation of federal law for the purposes of *Ex parte Young*, and accordingly, the Court finds the City's suit is not barred by the Eleventh Amendment.

In short, the Court finds that the City has standing to bring its preemption claims and that these claims are not barred by the Eleventh Amendment. The Court therefore DENIES the State's motion to dismiss for lack of jurisdiction. These jurisdictional challenges resolved, the Court proceeds to consider whether the City fails to state a claim on which relief can be granted.

## II. Motion to Dismiss for Failure to State a Claim

### A. Legal Standard

The Federal Rules of Civil Procedure require each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The claims must include sufficient factual allegations, accepted as true, to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED. R. CIV. P. 12(b)(6). When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). While all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman*, 14 F.3d at 1067. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### B. Application

The State argues the City fails to state a claim because (1) the City lacks a right of action to challenge § 250.007 as preempted by federal law and (2) the City has failed to plead sufficient facts in support of its preemption claims. The Court addresses each argument in turn.

#### 1. Right of Action

The State's first argument—that the City lacks a right of action—is easily disposed of. The Fifth Circuit has repeatedly allowed suits seeking equitable relief on the basis of federal preemption to proceed under *Ex parte Young*. *See, e.g., Air Evac*, 851 F.3d at 515 (finding *Ex parte Young* exception applied in action seeking injunctive relief against state officers on the basis of federal preemption); *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 331–33 & n.46 (5th Cir. 2005) (recognizing implied right of action to assert preemption claims seeking injunctive and declaratory relief). As the Court has concluded *Ex parte Young* is

9

applicable here, the City possesses a federal right of action to seek equitable relief in connection with its preemption claims.

### 2. Federal Preemption

The City puts forward two preemption arguments. First, the City argues § 250.007 is subject to conflict preemption because, by allowing landlords to choose whether or not to participate in the federal voucher program, § 250.007 stands as an obstacle to Congress's goals of assisting low-income families and promoting economically mixed housing. Resp. [#24] 8–9 (citing 42 U.S.C. § 1437f(a)). Second, the City argues § 250.007 is expressly preempted by 42 U.S.C. § 3615 and § 3617 because it condones a discriminatory housing practice and interferes with protected rights under the Fair Housing Act.[1] See Am. Compl. [#16] at 9. The Court first considers whether § 250.007 is subject to conflict preemption and then considers whether § 250.007 might be expressly preempted by § 3615 or § 3617.

#### a. Conflict Preemption

Under the Supremacy Clause of the Constitution, state law is preempted to the extent it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (internal quotation marks omitted)). "What is a sufficient obstacle [to trigger conflict preemption] is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Id.* (citing *Savage v. Jones*, 225 U.S. 501, 533 (1912)). When Congress has legislated in a field, such as housing, that is traditionally occupied by the states, Congress must demonstrate a "clear and manifest purpose" to preempt the state law. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). The

---

[1] The City incorrectly labels its express preemption and conflict preemption claims as "statutory preemption" and "constitutional preemption" claims, respectively. *See* Am. Compl. [#16] at 8–9.

10

party asserting federal preemption bears the burden of persuasion. *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011).

As an initial matter, the City has not identified any federal statute or regulation demonstrating a clear and manifest intent to preempt § 250.007, *Wyeth*, 555 U.S. at 565, and what evidence exists suggests Congress has not taken a position on whether landlords should be prohibited from discriminating against participants in the federal voucher program. For example, one of the implementing regulations for the federal voucher program, 24 C.F.R. § 982.53, provides that federal law does not preempt state and local laws prohibiting discrimination against voucher holders. This suggests the federal government has not chosen to enact such antidiscrimination measures itself but has instead allowed the states latitude to decide whether landlords should be required to accept federal housing vouchers and the concomitant burdens attendant upon participation in the voucher program.

In lieu of any federal statutory provision or regulation indicating Congress intended to mandate landlords accept federal vouchers and participate in the federal voucher program, the City suggests legislative history supports its preemption claim and demonstrates a policy of voluntary landlord participation undermines the goals and objectives of Congress. *See* Resp. [#24] at 9–10 (citing S. Rep. No. 104-195, at 31–32 (1995)). Yet the legislative history relied on by the City actually tends to undercut the City's position, rather than support it.

The City cites only a single piece of legislative history—the Senate Committee Report accompanying the Public Housing Reform and Empowerment Act of 1996 (1996 Reform Act). Resp. [#24] at 9–10. The 1996 Reform Act reworked a number of aspects of the federal housing voucher program, but two changes are particularly relevant here—the repeal of the "take one, take all" rule and the "endless lease rule." S. Rep. No. 104-195, at 31. The "take one, take all"

11

rule required landlords who rented to one voucher holder to subsequently "rent to all otherwise qualified [voucher holders] and not to refuse to lease to such recipients" simply because they were participants in the voucher program, while the "endless lease" rule required landlords to renew leases for voucher holders. *Id.* The Senate Report indicates these provisions were repealed because they "constrained the ability of owners to make rational business decisions" and forced landlords to fulfill "time-consuming and costly program requirements" by mandating that landlords continue to accept federal housing vouchers. *Id.*

The repeal of the "take one, take all" and "endless lease" rules demonstrates Congress has previously considered and rejected the idea of mandating landlord participation in the federal voucher program. Indeed, in rejecting even these lesser intrusions on landlord autonomy, the Senate Report accompanying the 1996 Reform Act appears to take for granted the voluntary nature of the federal voucher program. *See id.* (arguing the "take one, take all" and "endless lease" rules discouraged voluntary landlord participation in the voucher program and concluding their repeal would "greatly expand the choice and availability of housing units" by increasing landlord participation). Given Congress's apparent rejection of mandatory landlord participation, it makes little sense to suggest, as the City does, that voluntary landlord participation somehow stands as an obstacle to the purposes and objectives of Congress. Resp. [#24] at 8–9. More to the point, however, there is nothing in the Senate Committee Report demonstrating a clear and manifest congressional purpose to preempt state laws preserving the voluntary character of the federal voucher program.[2]

---

[2] In spite of the forgoing, the City contends the 1996 Reform Act demonstrates that Congress expected state and local antidiscrimination laws to step into the void created by Congress's abdication and did not intend to preempt state and local antidiscrimination requirements. Resp. [#24] at 10. This confuses the issue. The question of whether Congress intended to preempt state and local antidiscrimination requirements is separate from the question of whether a state can validly enact a law preserving the voluntary character of the federal voucher program and invalidating contrary municipal regulations. Only the latter question is at issue here.

12

In sum, the City has failed to provide any basis for concluding Congress possessed a clear and manifest purpose to preempt state laws, such as § 250.007, which preserve the voluntary character of the federal housing voucher program.[3] As the City has failed to carry its burden of persuasion, the Court GRANTS the State's motion to dismiss with respect to the City's federal conflict preemption claim.

### b. Express Preemption by § 3615

Section 3615 invalidates any state or local law that "purports to require or permit any action that would be a discriminatory housing practice." The City argues § 250.007 permits a discriminatory housing practice because discrimination against voucher holders disproportionately impacts minority residents. Resp. [#24] at 10–11; *see also Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2525 (2015) (holding disparate impact claims cognizable under the Fair Housing Act). In response, the State argues the City has not pleaded facts showing § 3615 preempts § 250.007. Reply [#27] at 10–11. Specifically, the State argues (1) the City has not identified a specific policy creating a barrier to fair housing and (2) the City has not pleaded a causal link between a policy and the disparate impact. *Id.*

Though the Court has concerns about the viability of the City's disparate impact claim, neither of the State's purported arguments are persuasive. First, the City has identified a policy—voluntary landlord participation in the federal voucher program—which allegedly creates a barrier to fair housing. Am. Compl. [#16] at 7–8. Second, the City has also pleaded a causal connection between this policy of voluntary landlord participation and disparate impact.

---

[3] Nor has the City given any indication Congress intended to allow the City to mandate landlord acceptance of federal vouchers where the State has made a contrary choice. *See Nixon v. Mo. Mun. League*, 541 U.S. 125 (2004) (holding that where preemption would interpose federal authority between a state and its municipal subdivision, Congress must have been "unmistakably clear" in its intention in order for conflict preemption to apply).

13

According to the City, the policy of voluntary landlord participation restricts the housing choices available to participants in the federal voucher program. *Id.* at 3. Further, the City contends the large majority of individuals in the City who participate in the federal voucher program are African-American or Hispanic. *Id.* Together, these allegations suggest a policy allowing discrimination against voucher holders would disproportionately impact minorities. Absent any further argument from the State as to why the City's § 3615 preemption claim should be dismissed, the Court DENIES the State's motion to dismiss with respect to this claim.

### c. Express Preemption by § 3617

Section 3617 renders it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" rights granted under the Fair Housing Act. Here, the City fails to identify any right that § 250.007 might interfere with or explain how § 250.007 might plausibly interfere with such a right. *See* Am. Compl. [#16] at 5, 9. Given the conclusory nature of the City's allegations with respect to § 3617, the Court GRANTS the State's motion to dismiss with respect to this preemption claim.

### Conclusion

As to the State's motion to dismiss for lack of jurisdiction, the Court concludes the City possesses standing to bring its preemption claims and further concludes the City's claims against the State are not barred by the Eleventh Amendment. As to the State's motion to dismiss for failure to state a claim, the Court concludes the City fails to state a claim for conflict preemption or express preemption under § 3617. However, with respect to the City's express preemption claim in connection with § 3615, the Court concludes the State has failed to put forward sufficient justification to merit dismissal at this time.

Accordingly,

IT IS ORDERED the State's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim [#21] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 12th day of July 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE